IN THE UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| **STEPHANIE MILLER**<br>6403 Summers Road<br>Windsor, Ohio 44099<br><br>and<br><br>**MARY ALYCE DAWSON**<br>1183 East 347th Street<br>Eastlake, Ohio 44095<br><br>individually, and on behalf of all others<br>similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>**INTELEOS, INC.,** an Ohio corporation,<br>f/k/a the **AMERICAN REGISTRY OF<br>DIAGNOSTIC MEDICAL<br>SONOGRAPHY, INC.**<br>1401 Rockville Pike, Suite 600<br>Rockville, Maryland 20852<br><br>          Defendant. | CASE NO.<br><br><br>**PLAINTIFFS STEPHANIE MILLER'S<br>AND MARY ALYCE DAWSON'S,<br>INDIVIDUALLY AND ON BEHALF OF<br>ALL OTHERS SIMILARLY SITUATED,<br>CLASS ACTION COMPLAINT WITH**<br><br><br>**JURY DEMAND ENDORSED<br>HEREON** |

Plaintiffs STEPHANIE MILLER and MARY ALYCE DAWSON (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, and for their Class Action Complaint against Defendant INTELEOS, INC., an Ohio corporation, f/k/a the AMERICAN REGISTRY OF DIAGNOSTIC MEDICAL SONOGRAPHY, INC. ("Defendant") state as follows:

## INTRODUCTION

1.     This case arises out of Defendant's failure to properly administer and score certification examinations of the American Registry of Diagnostic Medical Sonography in the areas of ultrasound (the "Exam").  The Exam is widely used as a means to test an individual's competency in the field of sonography, and Defendant has administered the Exam to sonographers, including Plaintiffs, throughout the United States.  However, from September 6, 2016 to March 14, 2017 (the "Class Period"), Defendant improperly scored individuals' results of the Exam and Defendant falsely reported that Plaintiffs and other sonographers *failed* the Exam when, in fact, they had actually *passed* the Exam.

2.     Plaintiffs bring this cause of action individually and on behalf of a nationwide Class of similarly situated individuals who passed the Exam but for whom Defendant reported an erroneous failing score.

3.     As a result of Defendant's conduct, Plaintiffs and Class members suffered adverse actions regarding their employment and/or ability to practice sonography, damage to their professional reputations, aggravation, and emotional distress.

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff STEPHANIE MILLER ("Plaintiff Miller") is a natural person residing in Ashtabula County, Ohio.

5.     Plaintiff MARY ALYCE DAWSON ("Plaintiff Dawson") is a natural person residing in Lake County, Ohio.

6.     Defendant INTELEOS, INC. is an Ohio corporation f/k/a the AMERICAN REGISTRY OF DIAGNOSTIC MEDICAL SONOGRAPHY, INC., with its principal place of business in Rockville, Maryland.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.  Plaintiffs bring this Complaint on behalf of a nationwide class, and at least one Class member is a citizen of a state different from Defendant.  Upon information and belief, the Class consists of hundreds of members, and the matter in controversy exceeds $5,000,000.

8.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391 because Defendant is a citizen of the state of Ohio and is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### *The Exam*

9.     Defendant touts that its credentials have been awarded to over 90,000 medical professionals worldwide and are recognized as the international standard in sonography credentialing.[1]  ARDMS-awarded credentials include Registered Diagnostic Medical Sonographer (RDMS), Registered Diagnostic Cardiac Sonographer (RDCS), Registered Vascular Technologist (RVT), Registered Musculoskeletal Sonographer (RMSKS), Registered Physician in Vascular Interpretation (RPVI), and Registered in Musculoskeletal (RMSK) Sonography. Defendant represents that its RVT credential has received formal endorsement from

---

[1] http://www.ardms.org/Discover-ARDMS/about-us/Pages/About%20ARDMS.aspx

the Society of Vascular Technology, making ARDMS' credential the premier credential for vascular technologists.[2]

10.     The Exam is designed to test an individual's competency in the field of sonography. Medical facilities that employ sonographers rely on the fact that a sonographer passed the Exam when considering the sonographer for employment, promotion, or other merit-based benefit. Indeed, employers throughout the country require and/or encourage sonographers to take and pass the Exam and obtain the certification credential.

11.     Defendant is in the business of administering and scoring the Exam and, as such, Defendant is aware that an individual who fails the Exam may be subjected to adverse actions regarding that individual's employment and/or ability to practice sonography.  Defendant is aware that an individual who fails the Exam may also suffer aggravation, emotional distress, damage to his or her professional reputation, and other similar injuries.

12.     Defendant makes assurances to the public on its website that its cut-off scores for passing or failing the Exam are derived fairly.  Specifically, Defendant represents that it uses a "criterion-referenced method for scoring all examinations," that it "rel[ies] on a cut-off, or minimum, score that represents basic competency," and that it "spend[s] a great deal of time ensuring that the cut-off scores are derived fairly." [3]

_____

[2] http://www.ardms.org/Pages/Progress-through-time.aspx

[3] http://www.ardms.org/Discover-ARDMS/exam-development-scoring-and-security/Pages/Notification-of-Results-and-Scoring.aspx

13.    If an individual fails the Exam, Defendant does not allow that individual to re-take the Exam for a minimum of sixty (60) days.

14.    Defendant has a standardized online application process, which Plaintiffs and Class members must use to apply to take the Exam. Plaintiffs and Class members have no ability to negotiate any of the terms of the application process required to take the Exam.

*Facts Relevant to Plaintiffs*

15.    Plaintiffs practice as sonographers in the state of Ohio.

16.    Plaintiffs' employer required Plaintiffs to take and pass the Exam.

17.    Plaintiff Dawson registered for the Exam using Defendant's online system.  As part of her registration, Defendant required Plaintiff Dawson to pay a $250 fee in order to sit for the Exam.   Plaintiff Dawson paid the $250 fee to Defendant.

18.    In October 2016, Plaintiff Dawson took the Exam.  Plaintiff Dawson passed the Exam, but she received from Defendant an incorrect score falsely stating that she failed the Exam.  Plaintiff Dawson was prohibited by Defendant from re-taking the Exam for a minimum of sixty (60) days.

19.    Relying on Defendant's erroneous scoring of her Exam results and believing that she failed the Exam, Plaintiff Dawson registered to re-take the Exam and paid *another* $250 fee to Defendant.  Plaintiff Dawson spent additional time and effort to study for the Exam again.

20.     In December 2016, Plaintiff Dawson took and passed the Exam again. As Plaintiff Dawson had unknowingly already passed the Exam, she received no benefit from re-taking the Exam.

21.     Plaintiff Miller's employer creates work schedules for Plaintiff Miller and other sonographers on a monthly basis.  Prior to April 2017, Plaintiff Miller's employer informed Plaintiff Miller that she would not be placed on the work schedule for the month of April 2017 until she took and passed the Exam.

22.     Plaintiff Miller registered for the Exam using Defendant's online system.  As part of her registration, Defendant required Plaintiff Miller to pay a $250 fee in order to sit for the Exam.  Plaintiff Miller paid the $250 fee to Defendant.

23.     In March 2017 (during the Class Period), Plaintiff Miller took the Exam.  Plaintiff Miller was instantaneously given her results.  Plaintiff Miller actually passed the Exam, but she received from Defendant an incorrect score falsely stating that she failed the Exam.  Plaintiff Miller was prohibited by Defendant from re-taking the Exam for a minimum of sixty (60) days.

24.     After Defendant falsely reported that Plaintiff Miller failed the Exam, Plaintiff Miller relied on Defendant's false report and informed her employer that she failed the Exam.

25.     Plaintiff Miller's employer created the work schedule for the month of April 2017 after Plaintiff Miller informed her employer that she failed the Exam. Because her employer believed that she failed the Exam, Plaintiff Miller was not scheduled to perform any work for the month of April 2017.

6

26.     During the last week of March 2017, Defendant acknowledged that it experienced a system-wide internal error in the calculation of Exam scores that resulted in Defendant erroneously calculating and falsely reporting failing scores for sonography professionals who took the Exam from September 6, 2016 until March 14, 2017.

### Harm to Plaintiff and Class Members

27.     From September 6, 2016 until March 14, 2017, Defendant continuously falsely reported that Class members failed the Exam, even though they had actually passed the Exam.  Defendant's conduct caused damage to Plaintiffs and Class members.

28.     Prior to being allowed to sit for the Exam, Plaintiffs and Class members paid a $250 fee to Defendant in exchange for Defendant's proper administration and accurate scoring of the Exam.  Plaintiffs and Class members suffered the loss of this fee because they paid for an Exam that was improperly scored, and their Exam results were inaccurately reported.

29.     Indeed, because Plaintiff Dawson and other Class members falsely believed that they had failed the Exam, they paid *another* $250 fee to Defendant in order to re-take the Exam, even though they had already passed the Exam and received no benefit from re-taking the Exam.

30.     Plaintiffs and Class members were also subject to adverse actions regarding their employment and/or ability to practice sonography.  Plaintiffs' and Class members' damages include, but are not limited to, lost wages, lost employment

opportunities, loss of certification to practice sonography, denial of certification to practice sonography, termination from employment, inability to find employment in the field of sonography, decrease in hours scheduled or worked, demotion, and decrease in pay.

31.     Plaintiffs and Class members also suffered damage to their professional reputation because it was falsely reported to their employers and co-workers that Plaintiffs and Class members failed the Exam.  Plaintiffs and Class members were required to pass the Exam to demonstrate their competency in the field of sonography.  Indeed, Defendant states that the score required to pass the Exam is the "minimum score" that "represents basic competency" in the field.[4] Because Defendant falsely reported that they failed the Exam, Plaintiffs and Class members were perceived by their employers and co-workers as lacking the requisite knowledge, skill, and expertise to practice in their field.

32.     Plaintiffs and Class members were also damaged because Defendant's false report that they failed the Exam caused Plaintiffs and Class members undue aggravation and emotional distress.  For example, after being told she failed the Exam in October 2016, Plaintiff Dawson experienced anxiety, stress, and used her vacation days to study for another Exam in December 2016, all of which negatively impacted her personal relationships.

---

[4]http://www.ardms.org/Discover-ARDMS/exam-development-scoring-and-security/Pages/Notification-of-Results-and-Scoring.aspx

33.     Additionally, Defendant required several Class members to pay a $35 fee for Defendant to re-score the results of their individual Exams.[5]  These Class members were damaged because they had to pay an additional fee for Defendant to re-score their erroneously reported failing scores.

<h3 style="text-align:center">CLASS ALLEGATIONS</h3>

34.     **Class Definition**: Plaintiffs bring this action pursuant to Fed R. Civ. P. 23 on behalf of a nationwide class of similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States who took an American Registry of Diagnostic Medical Sonography credentialing examination from September 6, 2016 to March 14, 2017, and who passed the examination but received an incorrect failing score.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

35.     **Ohio Subclass Definition**: Plaintiffs also bring this action pursuant to Fed. R. Civ. P 23 on behalf of a subclass of similarly situated individuals (the "Ohio Subclass"), defined as follows:

> All individuals in the state of Ohio who took an American Registry of Diagnostic Medical Sonography credentialing examination from September 6, 2016 to March 14, 2017, and

---

[5]http://www.ardms.org/Discover-ARDMS/exam-development-scoring-and-security/Pages/Notification-of-Results-and-Scoring.aspx

who passed the examination but received an incorrect failing score.

Excluded from the Ohio Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

36. **Numerosity**: The Class and Ohio Subclass are so numerous that joinder of all individual plaintiffs would be impracticable. Defendant administers the Exam to sonographers worldwide. Throughout the field of sonography, the Exam is recognized as a standard to test an individual sonographer's competency, knowledge, and expertise. Medical care providers throughout the country require and/or encourage sonographers to take and pass the Exam and obtain the certification credential. Exams were conducted continuously throughout the Class Period. Upon information and belief, the Class and Ohio Subclass consists of hundreds of members, if not more.

37. The exact number of Class and Ohio Subclass members is presently unknown but can be ascertained through Defendant's own records. Upon information and belief, Defendant has actual knowledge of the identities of all Class and Ohio Subclass members.

38. **Commonality and Predominance**: All members of the Class and Ohio Subclass have been subject to and affected by a uniform course of conduct: specifically, Defendant falsely reported to all Class and Ohio Subclass members that

10

they failed the Exam when, in fact, they has actually passed the Exam. There are questions of law and fact common to the proposed Class and Ohio Subclass that predominate over any individual questions.

39.  **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Class and Ohio Subclass.  All claims are based on the same legal and factual issues. Plaintiffs paid a registration fee to Defendant and took the Exam in order to test their knowledge and expertise in the field of sonography.  Plaintiffs passed the Exam, but Defendant falsely reported that Plaintiffs failed the exam.  As a result of Defendant's inaccurate score and false report, Plaintiffs suffered financial damages, adverse actions regarding their employment and/or ability to practice sonography, damage to their professional reputations, aggravation, and emotional distress.

40.  **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and Ohio Subclass. Plaintiffs have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of other Class and Ohio Subclass members, and Defendant has no defenses unique to Plaintiffs.

41.  **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class and Ohio Subclass members to prosecute their claims individually.  The trial and the litigation of Plaintiffs' claims are manageable.

42.     If individual Class and Ohio Subclass members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the most appropriate method for the quick and efficient adjudication of this controversy.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>
(On behalf of Plaintiffs, the nationwide Class, and the Ohio Subclass)

43.     Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

44.     Plaintiffs and Class members entered into a valid contract with Defendant, in which Plaintiffs and Class members agreed to pay $250 to Defendant in exchange for Defendant to properly administer the Exam and accurately score and report Plaintiffs' and Class members' Exam results.

45.     The contract between Defendant and Plaintiffs and Class members satisfied the requirements of a valid contract. Through Defendant's standardized online application process, Defendant offered to properly administer the Exam and accurately score and report Plaintiffs' and Class members' Exam results in exchange for $250. Plaintiffs and Class members accepted Defendant's offer by registering for the Exam through Defendant's online system. There was sufficient consideration between the parties for Defendant's proper administration and accurate scoring of the Exam because Plaintiffs and Class members paid $250 to Defendant.

46.     It was within the contemplation of the parties at the time of contracting that Defendant's failure to accurately score and report that Plaintiffs and Class

12

members passed the Exam would subject Plaintiffs and Class members to adverse actions regarding their employment and/or ability to practice sonography. Defendant knew that sonographers, including Plaintiffs and Class members, may be required to pass the Exam and obtain a certification credential as a condition of their employment, promotion, or other condition that would affect their circumstances of employment and/or ability to practice sonography.  Defendant also knew that, if it falsely reported that a sonographer failed the Exam when, in fact, that sonographer actually passed the exam, the sonographer could be terminated from his or her employment, be unable to find employment in the field of sonography, or suffer other adverse consequences in his or her employment including, but not limited to, harm to their professional reputation, the denial of a promotion, a decrease in hours scheduled or worked, a demotion, or a decrease in pay.

47.    It was further within the contemplation of the parties at the time of contracting that, if an individual sonographer falsely believed that he or she failed the Exam, the sonographer (1) may pay a $35 fee for Defendant to re-score the results of the Exam, (2) would be prohibited from re-taking the Exam until 60 days had passed, (3) may pay an additional $250 registration fee to re-take the Exam after the 60 day waiting period, and (4) devote additional time and effort to needlessly study for the Exam again.

48.    Plaintiffs and Class members performed under the contract because they paid the $250 Exam fee to Defendant.

13

49.     Defendant breached its contractual obligation to Plaintiffs and Class members because it failed to properly administer the Exam and failed to accurately score Plaintiffs' and Class member's Exam results, and Defendant falsely reported that Plaintiffs and Class members failed the Exam when, in fact, they had actually passed the Exam.

50.     As a result of Defendant's breach of contract, Plaintiffs and Class members suffered damages in the form of the loss of the $250 registration fee that they paid to Defendant to properly administer the Exam and accurately score and report their Exam results.  Plaintiffs and Class members paid for a service that they did not receive.

51.     Plaintiffs and Class members also suffered incidental and consequential damages as a result of Defendant's breach of contract in the form of adverse actions suffered by Plaintiffs and Class members regarding their employment and/or ability to practice sonography, harm to their professional reputation, additional fees paid to Defendant to re-score the results of the Exam and to re-take the Exam, additional time and effort to study for the Exam again, aggravation, and emotional distress. These incidental and consequential damages were reasonably foreseeable results of Defendant's failure to properly administer the Exam and accurately score and report the Exam results at the time the Plaintiffs and Class members entered into their contracts with Defendant.

52.     Maryland has a unique interest in regulating Defendant's breach of contract.

53.     Plaintiffs and Class members paid the $250 Exam fee by using Defendant's online system that, on information and belief, was created by or at the direction of Defendant's headquarters in the state of Maryland. When Plaintiffs and Class members interacted with Defendant's online system, they communicated with Defendant's headquarters in the state of Maryland.  When Plaintiffs and Class members paid the $250 registration fee, the fee was paid to Defendant's headquarters in the state of Maryland.  Upon information and belief, Defendant's internal error in its administration and scoring of the Exam and its falsely reporting the Exam results emanated from Defendant's headquarters in the state of Maryland.

<u>COUNT II</u>
<u>NEGLIGENCE</u>
**(On behalf of Plaintiffs, the nationwide Class, and the Ohio Subclass)**

54.     Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

55.     Defendant owed a duty of care to the plaintiffs to (1) reasonably monitor whether its internal systems were operating correctly, (2) reasonably monitor its internal systems for errors, (3) promptly correct errors in its internal systems, and (4) ensure that its internal systems properly administered the Exam and accurately scored and reported the Exam results.

56.     Defendant breached its duty of care to Plaintiffs and Class members by failing to reasonably monitor whether its internal systems were operating correctly, failing to reasonably monitor its internal systems for errors, failing to promptly correct errors in its internal systems, failing to ensure that its internal systems

15

properly administered the Exam and accurately scored and reported the Exam results, and falsely reporting that Plaintiffs and Class members failed the Exam when, in fact, they had actually passed the exam.

57. The foregoing failures and breaches of Defendant's duties to Plaintiffs and Class members were the direct and proximate result of Defendant's negligent conduct.

58. Upon information and belief, the foregoing failures and breaches of Defendant's duties to Plaintiffs and Class members occurred at and emanated from Defendant's headquarters in the state of Maryland.

59. As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class members suffered damages because Defendant falsely reported that they failed the Exam when, in fact, they actually passed the Exam. Plaintiffs and Class members were damaged because they were subject to adverse actions regarding their employment and/or ability to practice sonography. Plaintiffs' and Class members' damages include, but are not limited to, lost wages, lost employment opportunities, termination from employment, inability to find employment in the field of sonography, decrease in hours scheduled or worked, demotion, and a decrease in pay.

60. Plaintiffs and Class members also suffered damage to their professional reputations because it was falsely reported to their employers and co-workers that Plaintiffs and Class members failed the Exam. Because Defendant falsely reported that they failed the Exam, Plaintiffs and Class members were perceived by their

employers and co-workers as lacking the requisite knowledge, skill, and expertise to practice in their field.

61.     Plaintiffs and Class members were also damaged because Defendant's false report that they failed the Exam caused Plaintiffs and Class members undue aggravation and emotional distress, caused them to pay fees for Defendant to re-score the Exam and to take the Exam again, and caused them to spend additional time to needlessly study for the Exam again.

62.     Plaintiffs and Class members would not have suffered the foregoing damages if Defendant had not breached its foregoing duties that it owed to them.

63.     It was foreseeable to Defendant that if it breached its foregoing duties and falsely reported that Plaintiffs and Class members failed the Exam, it would result in Plaintiffs and Class members sustaining the foregoing damages.  Defendant knew that the damages suffered by Plaintiffs and Class members were likely outcomes of its foregoing breaches of its duties owed to Plaintiffs and Class members.

64.     The damages suffered by Plaintiffs and Class members are not solely economic damages, as Plaintiffs and Class members also suffered non-economic damages such as harm to their professional reputation and emotional distress.

<u>COUNT III</u>
<u>VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT</u>
<u>MD Code, Commercial Law, § 13-301, *et seq.*</u>
(On behalf of Plaintiffs and the nationwide Class)

65.     Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

17

66.     At all relevant times, there was in full force and effect the Maryland Consumer Protection Act ("MCPA"), MD Code, Commercial Law, § 13-301, *et seq*.

67.     At all relevant times, Defendant was engaged in the business of administering the Exam and scoring and reporting the Exam results.

68.     To state a claim under the MCPA, the Plaintiffs must show: 1) an unfair or deceptive trade practice or misrepresentation, 2) that was relied upon, and 3) caused an injury. *See Boardley v. Household Finance Corp. III*, 39 F.Supp.3d 689, 713 (D. Md. 2014).

69.     "Unfair or deceptive trade practices" are defined in § 13-301.  They include: (1) a false or misleading oral or written statement that has the capacity, tendency, or effect of deceiving or misleading consumers; (2) the failure to state a material fact that deceives or tends to deceive; and (3) disparagement of the services or business of another by a false or misleading representation of a material fact.

70.     Even an innocent misrepresentation is actionable under the MCPA. *Luskin's Inc. v. Consumer Protection Div.*, 353 Md. 335, 366 (Ct. App. 1999).

71.     Plaintiffs and Class members are "consumers" under the MCPA.

72.     Defendant knew, or should have known through reasonable due diligence, of the errors in its internal systems that resulted in inaccurate scoring and false reporting of Exam scores.

73.     Defendant engaged in deceptive and unfair acts and practices by concealing and failing to disclose to Plaintiffs and Class members that their Exam scores could be incorrectly calculated and reported.

18

74. Defendant engaged in deceptive and unfair acts and practices by making material misrepresentations to consumers, including Plaintiffs and Class members, on Defendant's website wherein Defendant assured consumers that it derives its cut-off scores for passing the Exam fairly when, in fact, Defendant's calculation of Plaintiffs' and Class members' Exam scores was erroneous.

75. Defendant engaged in deceptive and unfair acts and practices by making further misrepresentations when it falsely reported that Plaintiffs and Class members failed the Exam, even though they had actually passed the Exam.

76. Plaintiffs and Class members reasonably relied upon Defendant's misrepresentations and omissions.

77. As a direct and proximate result of Defendant's deceptive and unfair acts and practices, Plaintiffs and Class members suffered damages because Defendant falsely reported that they failed the Exam when, in fact, they actually passed the Exam. Plaintiffs and Class members were damaged because they were subject to adverse actions regarding their employment and/or ability to practice sonography. Plaintiffs' and Class members' damages include, but are not limited to, lost wages, lost employment opportunities, termination from employment, inability to find employment in the field of sonography, decrease in hours scheduled or worked, demotion, and a decrease in pay.

78. Plaintiffs and Class members also suffered damage to their professional reputations because it was falsely reported to their employers and co-workers that Plaintiffs and Class members failed the Exam. Because Defendant falsely reported

that they failed the Exam, Plaintiffs and Class members were perceived by their employers and co-workers as lacking the requisite knowledge, skill, and expertise to practice in their field.

79.     Plaintiffs and Class members were also damaged because Defendant's false report that they failed the Exam caused Plaintiffs and Class members undue aggravation and emotional distress, caused them to pay fees for Defendant to re-score the Exam and to take the Exam again, and caused them to spend additional time to needlessly study for the Exam again.

80.     Upon information and belief, Defendant's decision-making and its misrepresentations and omissions to consumers, including Plaintiffs and Class members, occurred at Defendant's headquarters in the state of Maryland.

81.     Upon information and belief, the error in Defendant's internal systems that caused Defendant to make the unfair and deceptive misrepresentations emanated from Defendant's headquarters in the state of Maryland.

**COUNT IV**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**R.C. § 1345.01, <em>et seq.</em>**
**(On behalf of Plaintiffs, the nationwide Class, and the Ohio Subclass)**

82.     Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

83.     At all relevant times, there was in full force and effect the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. § 1345.01, <em>et seq.</em>

84.     At all relevant times, Defendant was engaged in the business of administering the Exam and scoring and reporting the Exam results.

20

85.     The OSCPA directs the Ohio Attorney General to adopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02, 1345.03, and 1345.031 of the Revised Code. *R.C. §1345.05(B)*.

86.     The Ohio Attorney General has issued a substantive rule which states that it shall be a deceptive act or practice for any supplier to make the performance of any repair or service contingent upon a consumer's waiver of any rights provided for in this rule. *O.A.C. §109:4-3-05(D)(1)*.

87.     Defendant's online registration for the Exam required all applicants, including the Plaintiffs, to accept and agree to the terms of the "ARDMS Application Agreement", which stated at paragraph 10 that "you hereby agree to release and exonerate, and shall indemnify and hold harmless, ARDMS…from any and all liability of every nature and kind growing out of any action or inaction by any Indemnified Party pertaining to your application, eligibility, examination, certification, or status."

88.     The broad, sweeping release was unconscionable in that all applicants, including the Plaintiffs and Class members, were required to consent to such language as a condition of submitting an application, and the broad sweeping release was deceptive in that it required the applicants, including the Plaintiffs and Class members, to waive rights afforded to them under the OSCPA in violation of O.A.C. §109:4-3-05(D)(1).

89.     The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction.  *Wall v. Planet Ford, Inc.*, 159 Ohio App.3d 840, 847 (2d Dist. 2005).

90.     A consumer does not have to prove that the supplier intended to be unfair or deceptive in order to recover under the OCSPA.  *Wall*, 159 Ohio App.3d at 847.

91.     The OSCPA applies extraterritorially when the business communicates with non-Ohio Class members, either directly or indirectly, from Ohio.  *See Boundas v. Abercrombie & Fitch Stores, Inc.*, 2011 WL 5903495, at *2 (N.D. Ill. 2011).

92.     Defendant is a "supplier," and Plaintiffs and Class members are "consumers" under the OCSPA.  Further, Defendant's administration and scoring of Plaintiffs' and Class members' Exams in exchange for a $250 fee is a "consumer transaction."

93.     Defendant knew, or should have known through reasonable due diligence, of the errors in its internal systems that resulted in inaccurate scoring and false reporting of Exam scores.

94.     Defendant engaged in deceptive and unfair acts and practices by concealing and failing to disclose to Plaintiffs and Class members that their Exam scores could be incorrectly calculated and reported.

95.     Defendant engaged in deceptive and unfair acts and practices by making material misrepresentations to consumers, including Plaintiffs and Class members, on Defendant's website wherein Defendant assured consumers that it

22

derives its cut-off scores for passing the Exam fairly when, in fact, Defendant's calculation of Plaintiffs' and Class members' Exam scores was erroneous.

96.     Defendant engaged in deceptive and unfair acts and practices by making further misrepresentations when it falsely reported that Plaintiffs and Class members failed the Exam, even though they had actually passed the Exam.

97.     Defendants knew, or should have known, that the conduct alleged in the preceding paragraphs violated one or more of the provisions of the OSCPA, and that such conduct had been determined to be unfair, deceptive, and/or unconscionable by the Ohio Attorney General, and one or more Ohio courts.

98.     Plaintiffs and Class members reasonably relied upon Defendant's misrepresentations and omissions.

99.     As a direct and proximate result of Defendant's deceptive and unfair acts and practices, Plaintiffs and Class members suffered damages because Defendant falsely reported that they failed the Exam when, in fact, they actually passed the Exam.  Plaintiffs and Class members were damaged because they were subject to adverse actions regarding their employment and/or ability to practice sonography.  Plaintiffs' and Class members' damages include, but are not limited to, lost wages, lost employment opportunities, termination from employment, inability to find employment in the field of sonography, decrease in hours scheduled or worked, demotion, and a decrease in pay.

100.    Plaintiffs and Class members also suffered damage to their professional reputations because it was falsely reported to their employers and co-workers that

Plaintiffs and Class members failed the Exam.  Because Defendant falsely reported that they failed the Exam, Plaintiffs and Class members were perceived by their employers and co-workers as lacking the requisite knowledge, skill, and expertise to practice in their field.

101.    Plaintiffs and Class members were also damaged because Defendant's false report that they failed the Exam caused Plaintiffs and Class members undue aggravation and emotional distress, caused them to pay fees for Defendant to re-score the Exam and to take the Exam again, and caused them to spend additional time to needlessly study for the Exam again.

102.    Defendant is an Ohio corporation.  At all relevant times, the aforementioned misrepresentations were communicated to Class members indirectly from the state of Ohio.

**COUNT V**
**VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT**
**R.C. § 4165.01, *et seq.***
**(On behalf of Plaintiffs, the nationwide Class, and the Ohio Subclass)**

103.    Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

104.    At all relevant times, there was in full force and effect the Ohio Deceptive Trade Practices Act ("ODTPA"), R.C. § 4165.01, *et seq.*

105.    At all relevant times, Defendant was engaged in the business of administering the Exam and scoring and reporting the Exam results.

106.    The ODTPA prohibits any person from engaging in a deceptive practice in the course of business.  *See* R.C. § 4165.02.  Under the ODTPA, it is expressly

24

prohibited for a supplier to: a) disparage services or business of another by false representation of fact; or b) represent that goods or services are of a particular standard, quality, or grade, if they are another. *See id.*

107.    Defendant is a "person," and Plaintiffs and Class members are "consumers" under the ODTPA.

108.    Defendant made a false representation of fact to consumers, including Plaintiffs and Class members, on Defendant's website wherein Defendant assured consumers that it derives its cut-off scores for passing the Exam fairly when, in fact, Defendant's calculation of Plaintiffs' and Class members' Exam scores was erroneous.

109.    Defendant made further false representation of fact and disparaged the professional reputation of Plaintiffs and Class members when it falsely reported that they failed the Exam, even though they had actually passed the Exam.

110.    Plaintiffs and Class members reasonably relied upon Defendant's false representations of fact.

111.    As a direct and proximate result of Defendant's deceptive and unfair acts and practices, Plaintiffs and Class members suffered damages because Defendant falsely reported that they failed the Exam when, in fact, they actually passed the Exam.  Plaintiffs and Class members were damaged because they were subject to adverse actions regarding their employment and/or ability to practice sonography.  Plaintiffs' and Class members' damages include, but are not limited to, lost wages, lost employment opportunities, termination from employment, inability

25

to find employment in the field of sonography, decrease in hours scheduled or worked, demotion, and a decrease in pay.

112.    Plaintiffs and Class members also suffered damage to their professional reputations because it was falsely reported to their employers and co-workers that Plaintiffs and Class members failed the Exam.  Because Defendant falsely reported that they failed the Exam, Plaintiffs and Class members were perceived by their employers and co-workers as lacking the requisite knowledge, skill, and expertise to practice in their field.

113.    Plaintiffs and Class members were also damaged because Defendant's false report that they failed the Exam caused Plaintiffs and Class members undue aggravation and emotional distress, caused them to pay fees for Defendant to re-score the Exam and to take the Exam again, and caused them to spend additional time to needlessly study for the Exam again.

114.    Defendant is an Ohio corporation.    At all relevant times, the aforementioned misrepresentations were communicated to Class members indirectly from the state of Ohio.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs, the nationwide Class, and the Ohio Subclass)**

115.    Plaintiffs repeat and re-allege paragraphs 1-42 with the same force and effect as though fully set forth herein.

116.    "To recover under the theory of unjust enrichment, the plaintiff must prove the following elements: (1) the plaintiff conferred a benefit on the defendant;

26

(2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment." *Apostolos Grp., Inc. v. Josephson*, 2002-Ohio-753 (citing *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298)).

117.    Plaintiffs and Class members were required to pay Defendant a $250 fee to take the Exam.  Defendant also charged Plaintiff Dawson and other Class members *another* $250 Exam fee to re-take the Exam because Defendant falsely reported they did not pass the Exam the first time. Defendant also charged Class members a $35 fee for Defendant to re-score the results of their individual Exams after Defendant falsely reported that they failed the Exam.

118.    These payments by Plaintiffs and Class members conferred benefits on Defendant.

119.    Defendant has knowledge that it received these benefits at the expense of Class members.

120.    Defendant has acquired and retained money belonging to Plaintiffs and Class members as a result of its wrongful conduct.

121.    Defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience because Defendant knew or should have known of the error in its internal systems. It is unjust for Defendant to retain these payments made by Plaintiffs and Class members given Defendant's improper administration of the Exam and erroneous scoring and reporting of Exam results.

27

122.    Under the principles of equity, Defendant should not be allowed to keep the payments because Defendant has unjustly received them as a result of its actions described herein.

123.    Plaintiffs, individually and on behalf of the Class and Ohio Subclass, seek restitution for Defendant's unjust enrichment, as well as interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs STEPHANIE MILLER and MARY ALYCE DAWSON, individually, and on behalf of the Class and the Ohio Subclass, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and/or the Ohio Subclass defined herein;

B.    Designating Plaintiffs as representatives of the Class and/or the Ohio Subclass and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and/or Ohio Subclass, and against Defendant;

D.    Enjoining Defendant from making false representations of fact concerning the Exam and Exam results;

E.    Awarding Plaintiffs, the Class, and/or the Ohio Subclass damages equal to the amount of actual damages that they sustained, plus incidental damages, consequential damages, treble damages, and punitive damages;

F.    Ordering disgorgement of the amount of money that was wrongfully conferred on Defendant by Plaintiffs, the Class, and/or the Ohio Subclass;

G.    Awarding Plaintiffs, the Class, and/or the Ohio Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

H.      Granting all such further and other relief as the Court deems just and appropriate.

Respectfully Submitted,

/s/ Marc E. Dann
Marc E. Dann 0039425
William C. Behrens 0093031
The Dann Law Firm Co., LPA
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539
(216) 373-0536 – fax
notices@dannlaw.com

/s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
Zimmerman Law Offices, PC
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 fax
*tom@attorneyzim.com*

*(Pro Hac Vice to be applied for)*

Attorneys for Plaintiffs and the Class

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

/s/ Marc E. Dann
Marc E. Dann 0039425
William C. Behrens 0093031
The Dann Law Firm Co., LPA