# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| STEPHANIE MILLER, et al., individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>)   Case No.  1:17-cv-00763-DAP |
|          Plaintiff, | )<br>)   Judge Dan Aaron Polster |
| v. | )<br>)   Magistrate Judge David A. Ruiz |
| INTELEOS, INC., an Ohio Corporation, f/k/a the AMERICAN REGISTRY OF DIAGNOSTIC MEDICAL SONOGRAPHY, INC., | )<br>)<br>)<br>)<br>) |
|          Defendant. | )<br>) |

## REPRESENTATIVE PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020

Marc E. Dann 0039425
William C. Behrens 0093031
The Dann Law Firm Co., LPA
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539

i

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................1

**BACKGROUND** ..................................................................................................6

**I.   NATURE OF THE LITIGATION AND PROCEDURAL HISTORY** ...........6

**II.  SUMMARY OF THE SETTLEMENT** ..................................................8

    **A. The Settlement Class** ...........................................................8

    **B. Settlement Class Recovery** ...................................................8

        **1.   Subclass 1 Fund** ..........................................................9

        **2.   Subclass 2 Fund** ........................................................11

    **C. Service Awards to Class Representatives** .............................12

    **D. Attorneys' Fees and Costs** ..................................................12

    **E. Settlement Class Notice** .....................................................13

        **1.   Notice to Subclass 1 Members** ...................................14

        **2.   Notice to Subclass 2 Members** ...................................15

    **F. Settlement Class Members' Right to Opt Out** .......................16

    **G. Settlement Class Members' Right to Object** ........................17

    **H. Schedule for Settlement Administration** ..............................18

**ARGUMENT** ....................................................................................19

**I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE** ...........19

**II.  CERTIFICATION OF THE SETTLEMENT CLASS** ...............................21

    **A. The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied** .......22

        **1.   The Settlement Class Is So Numerous that
        Joinder of Individual Members Is Impracticable** .............22

2.  There are Questions of Law and Fact
Common to the Settlement Class ..................................................................22

3.  Representative Plaintiffs' Claims Are
Typical of the Claims of the Settlement Class ............................................23

4.  The Interests of Representative Plaintiffs and Proposed Settlement Class
Counsel are Aligned with the Interests of the Settlement Class ...............24

B.  The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied ................................24

1.  Questions Common to All Settlement Class Members Predominate
Over Any Potential Individual Questions....................................................25

2.  A Class Action Is the Superior Method to Fairly
and Efficiently Adjudicate the Matter .........................................................25

III.    SETTLEMENT CLASS COUNSEL ARE WELL-QUALIFIED
TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS ...................26

IV.    THE NOTICE PROGRAM SATISFIES ALL APPLICABLE
REQUIREMENTS...........................................................................................................26

A.  Contents of the Notice.............................................................................................27

1.  Opting Out.......................................................................................................28

2.  Objecting..........................................................................................................28

B.  Notice Program .........................................................................................................29

CONCLUSION ........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997)....................................................................................... 21

*Bentley v. Honeywell Int'l, Inc.,*
  223 F.R.D. 471 (S.D. Ohio 2004) ........................................................... 23, 25

*Bronson v. Bd. of Educ.,*
  604 F.Supp. 68 (S.D. Ohio 1984) .................................................................. 19

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ......................................................................... 22

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
  177 F.R.D. 54 (D.Mass.1997)........................................................................ 20

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)....................................................................................... 30

*Golden v. City of Columbus,*
  404 F.3d 950 (6th Cir. 2005) ......................................................................... 22

*Gooch v. Life Inv'rs Ins. Co. of Am.,*
  672 F.3d 402 (6th Cir. 2012) ......................................................................... 29

*In re A.M.S.,*
  75 F.3d 1069 (6th Cir. 1996) ......................................................................... 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995).............................................................................. 21

*In re Nationwide Fin. Servs. Litig.,*
  2009 WL 8747486 (S.D. Ohio Aug. 19, 2009).................................... 19, 20

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
  176 F.R.D. 158 (E.D.Pa.1997)....................................................................... 20

*In re Polyurethane Foam Antitrust Litig.,*
  135 F. Supp. 3d 679 (N.D. Ohio 2015)...................................................... 4, 30

*In re Prudential Sec. Ltd. P'ship Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................... 21

*In re Telectronics Pacing Sys., Inc.,*
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................... 19

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ......................................................................... 22

*Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. at 330 (N.D. Ohio 2001) ............................................................ 20

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F.Supp.2d 818 (E.D. Mich. 2008) .......................................................... 19

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
  546 F.Supp. 1 (N.D. Ohio 1982) .................................................................... 20

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................ 26, 27

*Sprague v. Gen. Motors*,
  133 F.3d 388 (6th Cir. 1998) ......................................................................... 22

*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988) ....................................................................... 25

*Taylor v. CSX Transp., Inc.*,
  264 F.R.D. 281 (N.D. Ohio 2007) ................................................................. 22

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ......................................................................... 19

## Statutes

Maryland Consumer Protection Act,
  MD Code, Commercial Law, §13-301 *et seq.* .............................................. 7

Ohio Consumer Sales Practices Act,
  R.C. §1345.01 *et seq.* ..................................................................................... 7

Ohio Deceptive Trade Practices Act,
  R.C. §4165.01 .................................................................................................. 7

## Other Authorities

*Manual for Complex Litigation*,
  § 30.41 (3rd ed.1995) ...................................................................................... 20

## Rules

Federal Rule of Civil Procedure 23 ................................................................. passim

v

**INTRODUCTION**

Plaintiffs Stephanie Miller ("Miller") and Mary Alyce Dawson ("Dawson"), through counsel, brought this action for damages alleging that Defendant Inteleos, Inc., f/k/a the American Registry for Diagnostic Medical Sonography, Inc. ("ARDMS") failed to properly administer and score the Registered Vascular Technology ("RVT") examination (the "Exam"), which is required to earn the Registered Vascular Technologist credential. Many hospitals, private doctors, etc., require that sonographers obtain the RVT credential as a condition of employment. During the time period from September 6, 2016 to March 14, 2017 (the "Class Period"), Plaintiffs alleged that ARDMS improperly scored individuals' results of the Exam, and incorrectly reported that Plaintiffs and other sonographers had failed the Exam, when, in fact, they had actually passed the Exam (hereinafter "False Fail(s)").

After mediation presided over by the Honorable Dan Aaron Polster, the Parties entered into a Settlement Agreement ("Settlement" or "Settlement Agreement"), a copy of which is attached hereto as <u>Exhibit A</u>.[1] The Settlement Agreement provides, pursuant to Federal Rule of Civil Procedure 23(b)(3), for certification of a Settlement Class for settlement purposes only. The Settlement Class is comprised of two Subclasses:

- "Subclass 1" means those Affected Exam Takers[2] who received an Initial Check(s) from ARDMS, but did not cash the Initial Check(s)[3] and did not request

---

[1] The Settlement Agreement is cited herein as "SA." The definitions in the Settlement are incorporated herein by reference.

[2] "Affected Exam Takers" means the 403 exam takers who took one or more RVT exams administered by ARDMS from September 6, 2016 to March 14, 2017 and who, because of a process error, received a "failing score" when they had in fact passed the exam(s). (SA, § II. Definitions).

[3] "Initial Check," "Initial Checks," or "Initial Check(s)" means the $250, $500, or $750 checks, depending on how many times the Affected Exam Taker took the RVT exam(s), that were sent by ARDMS to Affected Exam Takers to cover the cost of the RVT exam(s) and the cost they paid to verify their score(s) and/or reimbursement for a practice exam(s). (SA, § II. Definitions).

1

and did not receive additional compensation from ARDMS. (SA, § II. Definitions).

• "Subclass 2" means those Affected Exam Takers who cashed the Initial Checks sent to them by ARDMS and who did not request or receive additional compensation. (SA, § II. Definitions).

• Excluded from the Settlement Class are: ARDMS and Inteleos, Inc., and their respective officers, directors, and employees, board members, affiliated, related companies, or entity that has a controlling interest in ARDMS or Inteleos, Inc., and all of their respective employees, agents, board members, affiliates, legal representatives, heirs, successors, or assigns, Class Counsel and their immediate family members, and the judge to whom this case is assigned and the judge's immediate family.  The Settlement Class also does not include any of the Affected Non-Settlement Class Members, who are defined as those Affected Exam Takers who asked for and received additional compensation above and beyond the sum of the Initial Check(s) to compensate them for losses, including, *inter alia*, exam fees and related expenses, lost wages, lost opportunities, time spent studying and study materials, and/or consequential damages and/or emotional harm. The Settlement Class also does not include the two individuals who may have been part of Subclass 2 and who signed a retainer agreement with Class Counsel, but previously entered into a separate agreement and Class Counsel represented at Mediation that they would be excluded.

(SA, § II. Definitions).

Under the Settlement, the amount of Five-Hundred Seventy-Two Thousand Six-Hundred Forty-One Dollars and Zero Cents ($572,641.00) (hereinafter "Settlement Amount," "Settlement Payment" and "Settlement Funds") shall be paid by ARDMS into an escrow account, to fully resolve and settle this Class Action Lawsuit. (SA, § III.B.).  This Settlement Payment includes all payments to Named Plaintiffs and Settlement Class Members, including for attorneys' fees and costs, incentive payments or service awards, and costs of class notice and settlement administration. (SA, § III.B.). After deducting administrative costs and expenses applicable to class notice and settlement administration, the Attorneys' Fee and Expense Award and Service Awards, the "Net Settlement Amount" remaining shall be distributed according to the Plan of Allocation set forth in the Settlement, as more fully described below. (SA, § III.).

The Settlement Amount shall be allocated as follows: $445,141.00 shall be distributed among Subclass 1 Members ("Subclass 1 Fund"), and $127,500.00 shall be distributed among Subclass 2 Members ("Subclass 2 Fund"), after deducting the proportionate Attorneys' Fee and Expense Award, Service Award, and costs of class notice and settlement administration. Subclass 1 Members must submit a valid claim form to receive their share of the Subclass 1 Fund, but Subclass 2 Members will automatically receive a check for their share of the Subclass 2 Fund.

To the extent necessary, the Settlement administrator may adjust the amounts of payments within each Subclass Settlement Fund by increasing or decreasing them as necessary on a *pro rata* basis to pay Settlement Class Members in order to fully allocate and pay the full Net Settlement Amount of each Settlement Fund so that no money remains or reverts back to ARDMS.

Settlement checks are void if not cashed within six (6) months after the date of issuance (SA, § III.D.). In the event that a Claimant fails to cash a settlement check within the 6 month deadline, such uncashed remaining settlement funds shall be paid *cy pres* to The Legal Aid Society of Cleveland (https://lasclev.org/). *Id.*

A *cy pres* recipient should be chosen that is related to the purposes and remedies sought by the class action as closely as possible. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016). Additionally, where the *cy pres* amount is contemplated to be scant, any concern for matching the geographic scope of the class may be overridden, and a *cy pres* recipient with a narrower focus may be chosen so the impact of the small donation will be greater. *In re Polyurethane Foam Antitrust Litig.*, 178 F.Supp.3d 621, 623 (N.D. Ohio 2016).

Here, Class Counsel have selected The Legal Aid Society of Cleveland because it provides a medical-legal partnership and one of its goals is education, which benefits many people including the medical community to which sonographers belong. Attorneys with The Legal Aid Society of Cleveland are integrated at MetroHealth and St. Vincent Charity Hospital to help patients navigate the complex government and community systems that often hold solutions to many social determinants of health – for example, income support for food insecure families, utility shut-off protection for those with health complications, and eviction prevention that keeps children from becoming homeless. *See* https://lasclev.org/legal-aid-expands-its-medical-legal-partnership-with-the-metrohealth-system/ (last visited Nov. 17, 2017). The program, now with four attorneys and one paralegal, is at four locations at MetroHealth. *Id.* Through the program, in addition to handling cases and doing advocacy, Legal Aid attorneys educate multi-disciplinary teams of health care providers and students about patients' legal rights. *Id.*

Even though the Settlement Class includes people in states across the nation, choosing a Cleveland organization is justified because it has been the forum for this litigation and the anticipated *cy pres* amount, if any, will make the greatest impact on a local organization.

As shown herein, the Settlement readily satisfies the standard for preliminary approval— that is, it is well within the required range of possible approval. As such, Plaintiffs respectfully request that this Honorable Court enter an Order:

    (1)      Preliminarily approving the Settlement;

    (2)      Certifying the Settlement Class comprised of Subclass 1 and Subclass 2, under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

    (3)      Appointing named Plaintiffs Stephanie Miller and Mary Alyce Dawson as Class Representatives of the Settlement Class;

    (4)      Appointing Thomas A. Zimmerman, Jr., Sharon A. Harris, and Maebetty Kirby of the Zimmerman Law Offices, P.C., and Marc Dann and William C. Behrens of the Dann Law Firm, LPA, as Settlement Class Counsel;

    (5)      Approving the Claim Form, attached as Exhibit 3 to the Settlement Agreement;

    (6)      Appointing Kurtzman Carson Consultants LLC ("KCC") as the Settlement Administrator;

    (7)      Approving the Notice Program as set forth in the Settlement;

    (8)      Approving as to form and content the notices attached to the Settlement Agreement as Exhibit 4 (Subclass 1 Electronic-Mail Notice), Exhibit 5 (Subclass 1 Postcard Notice), Exhibit 6 (Subclass 2 Electronic-Mail Notice), Exhibit 7 (Subclass 2 Postcard Notice), and Exhibit 8 (Detailed Notice);

    (9)      Approving as to form and content the letter to accompany the settlement check (attached to the Settlement Agreement as Exhibit 9) that is to be sent to Subclass 2 Members; and

    (10)    Scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement and the request for attorneys' fees, costs, expenses, and Representative Plaintiff service awards.

## BACKGROUND

### I.    NATURE OF THE LITIGATION AND PROCEDURAL HISTORY

In March 2017, ARDMS discovered a scoring error in connection with the administration of its RVT exam during the period of September 6, 2016 to March 14, 2017 that resulted in 403 exam takers erroneously receiving a failing score (the "Affected Exam Takers"). ARDMS immediately corrected the error and advised the 403 Affected Exam Takers that it would reimburse them for their exam fees and related expenses, and to submit documentation for any additional expenses or damages. ARDMS then sent settlement packages to Affected Exam Takers, which contained, *inter alia,* disclosures and checks that reimbursed exam takers for the cost of their exam(s). The checks were for $250, $500, or $750 ("Initial Check," "Initial Checks," or "Initial Check(s)") depending on how many times the individual took the exam. Because the exam takers were reimbursed for *all* exam fees for the relevant "failed" exams and subsequently received a passing score without paying for and sitting for an additional exam, exam takers did not have to pay for an exam that they ordinarily would have had to pay for. A handful of individuals also received an additional $35 and/or $25 for the costs they paid to verify their score and/or reimbursement for a practice exam, as the case may be. Where applicable, this amount was also included in the Initial Checks.

A settlement letter, which accompanied the reimbursement check in the settlement package, advised the exam takers, *inter alia*, that: (1) they may contact ARDMS for additional compensation if they believed that the initial check did not fully compensate them for their losses; (2) they should not cash the check if they believed that the enclosed check did not fully compensate them; and (3) that by cashing the check, the exam taker was fully releasing ARDMS

from liability.  (Doc 21).  ARDMS has asserted that it reached agreement with a number of the Affected Exam Takers to reimburse them for their expenses and damages.  (SA, § I. Recitals).

On April 10, 2017, Miller and Dawson, individually and on behalf of a nationwide Class of similarly situated individuals, brought this action seeking relief for breach of contract, negligence, violations of the Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301 *et seq.,* violations of the Ohio Consumer Sales Practices Act, R.C. §1345.01 *et seq.,* violations of the Ohio Deceptive Trade Practices Act, R.C. §4165.01, and for unjust enrichment. (Doc. 1). Plaintiffs sought actual and consequential damages, including the cost of the exam, the cost of study materials, travel expenses, lost wages, lost employment opportunities; non-economic damages for emotional distress, aggravation, and embarrassment; treble damages under the Ohio Consumer Sales Practices Act; and punitive damages and attorneys' fees. *Id.*

On April 27, 2017, Plaintiffs filed an *Ex Parte* Motion for Temporary Restraining Order (Doc. 7) and Motion for Preliminary Injunction (Doc. 8), seeking to bar Defendant from sending putative Class members communications in the form of a settlement check, along with a letter asserting that cashing the check releases all their claims.[4] Plaintiffs alleged that the communications were misleading and contained inaccurate information as to all of the potential relief available to Class members. The Court denied Plaintiffs' motions. (Doc. 11 and 21). However, the Court directed that "any future blanket written communications to putative class members shall be drafted jointly." (Doc. 21 at p. 2). The Parties then agreed to let the process with the letters that were already sent by Defendant continue for approximately 60 days. *Id.*

---

[4] The letter states, among other things, that cashing the check constitutes an agreement that the putative Class member has been fully compensated for any injury, that the putative Class members fully release and forever discharge Defendant from any liability in this case, and that by cashing the check, the putative Class members issue a blanket release as to "any fact and/or circumstance related in any way to the Vascular Technology (VT) exam(s) that you have taken and/or any incorrect scoring."

On July 13, 2017, the Court held a case management conference and set the matter for mediation. In preparation for that mediation, the Parties engaged in preliminary settlement discussions, Plaintiffs provided Defendant with a Settlement demand, Defendant responded, and the Parties filed a joint settlement report with the Court. The mediation conference was held with the Honorable Dan Aaron Polster on September 28, 2017, and the Court successfully mediated a settlement. Plaintiffs now seek preliminary approval of that settlement.

## II.     SUMMARY OF THE SETTLEMENT

### A.     The Settlement Class

Under the terms of the Settlement, the Settling Parties agreed to certification of a Settlement Class consisting of Subclass 1 and Subclass 2 for settlement purposes only:

"Subclass 1" means those Affected Exam Takers who received an Initial Check(s) from ARDMS, but did not cash the Initial Check(s) and did not request and did not receive additional compensation from ARDMS. (SA, § II. Definitions). There are 59 expected individuals in Subclass 1.[5]

"Subclass 2" means those Affected Exam Takers who cashed the Initial Checks sent to them by ARDMS and who did not request or receive additional compensation. (SA, § II. Definitions).  There are 255 expected individuals in Subclass 2.[6]

### B.     Settlement Class Recovery

ARDMS shall make a payment in the amount of $572,641.00 (the "Settlement Amount", "Settlement Payment" or "Settlement Funds") to fully resolve and settle this Class Action

---

[5] Subclass 1 consists of potentially 61 individuals, but two of these individuals are represented by other counsel and are expected to opt-out of the Settlement Class. (SA, § II. Definitions).

[6] Subclass 2 consists of potentially 257 individuals.  Two of these individuals, who are also represented by Class Counsel, are excluded from the Settlement Class because they entered into a separate agreement with Defendant to settle their claims. (SA, § II. Definitions).

Lawsuit.  This Settlement Payment is intended to be all-inclusive and is intended to resolve any and all payments that Named Plaintiffs and Settlement Class Members have against ARDMS. This Settlement Payment includes all payments to Named Plaintiffs and Settlement Class Members, including for attorneys' fees and costs, incentive payments or service awards, and costs of notice and administration.

Estimated costs of notice and settlement administration are approximately $30,000. *See* Declaration of Daniel Burke of KCC, attached hereto as <u>Exhibit D</u>. Class Counsel anticipate seeking an award of attorneys' fees of one-third of the $572,641 Settlement Fund, which amounts to approximately $190,880. Districts courts in this Circuit have held that one-third of the settlement fund is a reasonable award of attorney's fees. *See Mees v. Skreened, Ltd.,* 2016 WL 67521 (S.D. Ohio, January 6, 2016) (approving an award of attorney's fees of one-third of the settlement amount); *In re Prandin Direct Purchaser Antitrust Litigation*, 2015 WL 1396473 (E.D. Mich. 2015); *In re Southeastern Milk Antitrust Litigation*, 2013 WL 2155387 (E.D. Tenn. 2013); *Bessey v. Packerland Plainwell, Inc.,* 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007). Additionally, Class Counsel expended approximately $4,000 in litigation costs and expenses to date and anticipate seeking reimbursement of those costs and expenses. Class Counsel will seek Service Awards of $5,000 for each of the two Class Representatives.

       1.      **Subclass 1 Fund**

Subclass 1 Members in the Settlement Class who timely submit a valid Claim Form will receive a monetary payment from the Net Settlement Amount of the Subclass 1 Fund to compensate them for their damages. (SA, § III.C.1.a-b). The Subclass 1 Fund consists of Four-Hundred Forty-Five Thousand One Hundred Forty One Dollars and Zero Cents ($445,141.00) of the Settlement Amount, less proportionate Attorneys' Fee and Expense Award, Service Award,

and costs of class notice and settlement administration. (SA, § III.C.1). The Subclass 1 Fund is approximately 78% of the Settlement Amount. Therefore, 78% of the total of the Attorneys' Fee and Expense Award sought, the two Service Awards sought, and the costs of class notice and settlement administration equals approximately $183,207, leaving approximately $261,934 remaining in the Net Subclass 1 Fund to pay the expected fifty-nine (59) Subclass 1 Members who timely submit valid Claim Forms and do not Opt-Out of this Settlement.

Subclass 1 Members may only seek damages that they incurred *after* they were incorrectly advised for the first time that they failed an Exam that they had actually passed ("False Fail"). Subclass 1 Members *cannot* seek damages for items that occurred *prior to* the first False Fail, although under the Settlement they will be receiving a refund of all of their Exam registration fees and fees to verify their RVT Exam result(s) or take practice Exam(s). (SA, Exhibit 3, customized Claim Form). The payment is intended to provide compensation for monetary damages such as the Exam registration fees, fees for Exam score verification, compensation for time spent studying to re-take the Exam and related child care and study materials, lost wages or job opportunity, transportation costs to travel to the Exam site to re-take the Exam, hotel costs, unreimbursed counseling, therapy, and medical expenses from the stress of receiving a False Fail and having to re-take the Exam, and compensation for non-economic damages, such as stress and aggravation, based upon how long the Settlement Class Member suffered before learning that they actually passed the Exam. (SA, § III.C.1, and the Claim Form attached to the SA as Exhibit 3).

If a Subclass 1 Member sustained damages in an amount *less* than the maximum possible recovery set forth for each category of damages (as stated in the Claim Form), they do not have to submit any documents to support their claimed damages for that category. (SA, Exhibit 3).

10

However, if a Subclass 1 Member believes he or she sustained damages *greater* than the maximum possible recovery (as set forth for each category), then they must submit supporting documentation along with the Claim Form to the Settlement Administrator. *Id.* Missing documentation or insufficient support may affect the amount that a Subclass 1 Member may be able to recover. *Id.*

Once the Settlement Class is certified, Class Counsel will be formally representing the members of Subclass 1.  Class Counsel will assist Subclass 1 Members in working out issues with the Settlement Administrator relative to any questions or disputes with their claims.

### 2.  Subclass 2 Fund

Subclass 2 Members in the Settlement Class do not have to submit a Claim Form to participate in the Settlement and receive their share of the Subclass 2 Fund. (SA, § III.C.2). The Subclass 2 Fund consists of One-Hundred Twenty-Seven Thousand Five-Hundred Dollars and Zero Cents ($127,500.00) of the Settlement Amount, less the proportionate Attorneys' Fee and Expense Award, Service Award, and costs of class notice and settlement administration. (SA, § III.C.2). ARDMS will mail a check in the amount of Five-Hundred Dollars ($500.00), less proportionate Attorneys' Fee and Expense Award, Service Award, and costs of class notice and settlement administration, to Subclass 2 Members who do not Opt-Out of this Settlement. (SA, § III.C.2).

The Subclass 2 Fund is approximately 22% of the Settlement Amount. Therefore, 22% of the total of the Attorneys' Fee and Expense Award sought, the two Service Awards sought, and the costs of class notice and settlement administration equals approximately $51,673, leaving approximately $75,827 remaining in the Net Subclass 2 Fund to pay the expected 255 Subclass 2 Members who do not Opt-Out of this Settlement.  Assuming that there are no opt-outs, the

estimated net amount of the settlement check to be mailed to each Subclass 2 Member would be approximately $300.

To the extent necessary, the Settlement Administrator shall adjust the amounts of individual payments to Settlement Class Members within each Subclass Settlement Fund by increasing or decreasing the payments on a *pro rata* basis in order to fully allocate and pay the full Net Settlement Amount of each Subclass Settlement Fund so that no money remains or reverts back to ARDMS. (SA, § III.C.3).

### C.    Service Awards to Class Representatives

Class Counsel will make an application to the Court for a Service Award to Plaintiffs Stephanie Miller and Mary Alyce Dawson in consideration for their having undertaken this Class Action Lawsuit, assisted in the prosecution, and otherwise serving as Class Representatives. (SA, § X). Said application shall be filed at least 14 days prior to the Opt-Out and Objection Deadline, and ARDMS will not object to said application. *Id.* In consideration of the contributions of the Class Representatives, the amount to be requested will be an amount up to and no greater than $5,000 for each of the two Class Representatives. *Id.* Plaintiffs' support for the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested Service Award. *Id.* Further, the terms and enforcement of the Settlement Agreement is not conditioned on the approval of the Requested Service Award. *Id.*

### D.    Attorneys' Fees and Costs

Class Counsel will make an application to the Court for payment from the Settlement Amount of attorneys' fees of up to one-third (1/3) of the Settlement Amount plus the costs and expenses that Class Counsel has incurred in the prosecution of the Class Action Lawsuit. (SA, § IX.). As set forth above, the costs and expenses that Class Counsel incurred to date are

approximately $4,000. Said application shall be filed at least 14 days prior to the Opt-Out and Objection Deadline, and ARDMS will not object to said application. *Id.* The amount of fees, costs and expenses awarded by the Court shall be deducted from the Settlement Amount and paid by the Settlement Administrator as awarded by the Court. *Id.* Class Counsel's support of the Settlement Agreement as fair and reasonable is not conditioned upon the Court's award of the requested fees and expenses. *Id.* Further, the terms and enforcement of the Settlement Agreement is not conditioned on the approval of an award of the requested fees and expenses. *Id.*

### E.     Settlement Class Notice

A list of Settlement Class Members, showing which of them would be in Subclass 1 and which of them would be in Subclass 2, will be provided by ARDMS to the Settlement Administrator. (SA, § VIII.A.). The class list will contain the names, mailing address, and e-mail addresses of the Settlement Class Members. *Id.* The class list will also provide the following information from ARDMS' records with regard to each Subclass 1 Member: (1) the number of times the Subclass 1 Member "False Failed" the RVT Exam, and the dates of each Exam that was erroneously reported as a "False Fail", (2) the amount of money the Subclass 1 Member paid ARDMS in registration fees to take all RVT Exam(s) between September 6, 2016 to March 14, 2017, (3) the amount of money the Subclass 1 Member paid to verify all of his or her Exam result(s) for all RVT Exams taken between September 6, 2016 to March 14, 2017, and (4) the amount of money the Subclass 1 Member paid for all  practice RVT Exams taken between September 6, 2016 to March 14, 2017. *Id.*

As set forth in the KCC Declaration (Exhibit D), the estimated costs of notice and settlement administration are $30,000. KCC has significant experience as a class action notice provider and administrator. *See* Exhibit D. KCC administers claims processes and distributes

funds in a vast array of varying matters, ranging from small and simple settlements to multi-year complex settlements involving millions of claimants. *See* KCC Class Action Services Resume, attached to <u>Exhibit D</u> as Exhibit 1, at p. 1. KCC has administered over 6,500 class action settlements and handled thousands of distribution engagements in other contexts, as well. *Id.* Its domestic infrastructure includes call centers with over 1,200 seats, claims intake facilities that can open and scan 200,000 claims in a single day, and document production capabilities that print and mail millions of documents annually. *Id.* Last year, KCC's distribution services team distributed over half a trillion dollars. *Id.*

### 1. Notice to Subclass 1 Members

No later than 30 days after Preliminary Approval, the Settlement Class Notice shall be disseminated to Settlement Class Members in Subclass 1, as follows:

- <u>Electronic Mail</u>: The Settlement Administrator shall attempt to transmit via electronic mail to Subclass 1 Members the Subclass 1 Email Notice (attached to the Settlement as Exhibit 4) and the customized Claim Form (attached to the Settlement as Exhibit 3). (SA, § VIII.B.1.a.).

- <u>U.S. Mail</u>: The Settlement Administrator shall also mail the Subclass 1 Postcard Notice (attached to the Settlement as Exhibit 5) to all Settlement Class Members in Subclass 1 for whom the Settlement Administrator was provided a mailing address in the class list. (SA, § VIII.B.1.b.). The Subclass 1 Postcard Notice will inform the Subclass 1 Members that they can obtain their customized Claim Form by visiting the Settlement Website and inputting their personal identification number that will be provided on the Subclass 1 Postcard Notice.

  - The customized Claim Form will set forth the name of the Subclass 1 Member, the number of times and the dates during the Class Period that he or she took the Exam, the amount of money in registration fees he or she paid to take the Exam during the Class Period, the amount he or she paid to verify his or her Exam result(s) or to take a practice Exam, and the amount he or she is entitled to under the Settlement for non-economic damages to compensate him or her for the stress and aggravation related to the False Fail(s).

  - Subclass 1 Members will be required to fill in information for any of the other categories of damages for which they are seeking additional

14

compensation.[7] Subclass 1 Members may only seek damages that they incurred *after* they were incorrectly advised for the first time that they failed an Exam that they had actually passed ("False Fail"). Subclass 1 Members *cannot* seek damages for items that occurred *prior to* the first False Fail, although they will be receiving a refund of all of their Exam registration fees and fees to verify their RVT Exam result(s) under the Settlement.

o  If a Subclass 1 Member sustained damages in an amount *less* than the maximum possible recovery set forth for each category of damages (as stated in the Claim Form), they do not have to submit any documents to support their claimed damages for that category. However, if a Subclass 1 Member believes he or she sustained damages *greater* than the maximum possible recovery (as set forth for each category), then they must submit supporting documentation along with the Claim Form to the Settlement Administrator. Missing documentation or insufficient support may affect the amount that a Subclass 1 Member may be able to recover.

o  Subclass 1 Members will be required to confirm their name, mailing address, telephone number, and email address.

o  Subclass 1 Members will also be required to attest to the contents' truthfulness.

### 2.  Notice to Subclass 2 Members

No later than 30 days after Preliminary Approval, the Settlement Class Notice shall be disseminated to Settlement Class Members in Subclass 2, as follows:

- Electronic Mail: The Settlement Administrator shall attempt to transmit via electronic mail the Subclass 2 Email Notice (attached to the Settlement as Exhibit 6) to Subclass 2 Members. (SA, § VIII.B.2.a.). A Subclass 2 Member does not have to do anything to get a payment. Unless a Subclass 2 Member opts-out of the Settlement, after final approval, a check will automatically be sent to the last known address in ARDMS' records for each Subclass 2 Member. The Notice will inform Subclass 2 Members to call the Settlement Administrator with their new address if they have moved after taking the RVT Exam. The Subclass 2 Email Notice to Subclass 2 Members will also direct the Subclass 2 Members to the Settlement Website.

---

[7] The categories of damages are: Category 1-Study Materials; Category 2-Child Care costs incurred while studying and re-taking an Exam; Category 3-Lost Wages/Lost Job Opportunity; Category 4-Time Spent Studying to Re-Take an Exam (this includes time off from work to study); Category 5-Travel expenses to take the Exam(s); Category 6-Lodging/Hotel to take the Exam(s); and Category 7-Counseling/Therapy/Medical Visits.

- <u>U.S. Mail</u>: The Settlement Administrator shall also mail the Subclass 2 Postcard Notice (attached to the Settlement as Exhibit 7) to all Settlement Class Members in Subclass 2 (for whom the Settlement Administrator is able to obtain a mailing address). (SA, § VIII.B.2.b.). The Subclass 2 Postcard Notice will request that the Subclass 2 Member provide any new mailing address if it is different than the address ARDMS has in its records, and direct the Subclass 2 Member to the Settlement Website. *Id.*

Additionally, at the time the Settlement Class Notice is disseminated, and no later than 30 days after Preliminary Approval of the Settlement Agreement, including approval of the form and content of the Settlement Class Notice, the Settlement Administrator shall cause the Settlement Website to be activated on the Internet.  (SA, § VIII.C).  The Settlement Website shall include:

(a)    The Settlement Administrator's toll-free telephone number for Settlement Class Members to call for information;

(b)    Links to the Detailed Notice (attached to the Settlement as Exhibit 8);

(c)    Relevant case documents in connection with the Settlement Agreement;

(d)    A process by which a Subclass 1 Member can obtain his or her customized Claim Form;

(e)    A process by which a Subclass 1 Member can submit his or her Claim Form electronically; and

(f)    Such other documents and information as may be agreed on by the Parties or ordered by the Court.

(SA, § VIII.C).

**F.    Settlement Class Members' Right to Opt Out**

Any Settlement Class Member seeking to opt-out of the Settlement must submit a Request for Exclusion from the Settlement Class—postmarked on or before the Opt-Out and Objection Deadline—which must include: (a) their name and address; (b) their physical signature; (c) the name and number of this Class Action Lawsuit; and (d) a statement that they

16

wish to be excluded from the Settlement Class. (SA, § XI.A.). Any Settlement Class Member who fails to submit a timely Request for Exclusion containing the above information shall be bound by the Settlement Agreement.

All Settlement Class Members who properly file a timely Request for Exclusion from the Settlement Class shall (a) not be bound by any orders or Final Approval Order entered in this Class Action Lawsuit, (b) not be entitled to relief under this Settlement Agreement, (c) not gain any rights by virtue of this Settlement Agreement, and (d) not be entitled to object to any aspect of this Settlement Agreement. (SA, § XI.A.). No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out. *Id.*

### G.  Settlement Class Members' Right to Object

Any Settlement Class Member who does not opt out of the Settlement Class may object to the Settlement or any portion of the Settlement Agreement in writing, in person, or through counsel at the Fairness Hearing, at their own expense. (SA, § XI.B.). The Settlement Class Notice shall specify that any objection to the Settlement, and any papers submitted in support of said objection, shall be considered by the Court at the Fairness Hearing only if, on or before the Opt-Out and Objection Deadline approved by the Court and specified in the Settlement Class Notice, the person making the Objection files notice of an intention to do so and at the same time (a) files copies of any papers they propose to be submitted at the Fairness Hearing with the Clerk of the Court, and (b) either (i) files the objection through the Court's ECF system if the objection is from a Settlement Class Member represented by counsel, or (ii) sends copies of such papers by mail, hand, or overnight delivery service to the following:

<u>For Plaintiffs</u>:

Thomas A. Zimmerman, Jr.
ZIMMERMAN LAW OFFICES, P.C.

17

77  W. Washington St., Suite 1220
Chicago, IL 60602

For ARDMS:

Matthew D. Berkowitz
CARR MALONEY P.C.
2020 K Street, NW, Suite 850
Washington, DC 20006

Any Settlement Class Member who intends to object to this Settlement must include in the written objection: (a) their name and address; (b) their arguments, citations, reasons, and evidence supporting the Objection (including copies of any documents relied on); (c) a statement that they are a Settlement Class Member; (d) the date(s) on which they took the RVT exam(s) and received a false failing score; (e) their physical signature; and (f) a statement indicating whether they intend to appear at the Fairness Hearing with or without counsel.  (SA, § XI.B).

Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived their objections and be forever barred from making any such objections in the Class Action Lawsuit or in any other action or proceeding. *Id.* While the statement described above is *prima facie* evidence that the objector is a member of the Settlement Class, subject to verification based on the Parties' records, in the event of inaccuracies or inconsistencies in the statement, any of the Parties may take limited discovery regarding the matter, subject to Court approval. *Id.*

## H.    Schedule for Settlement Administration

The Parties request that the Court set the following schedule for the proposed Agreement:

- A Settlement Website shall be established, and Class Notice is to be sent within thirty (30) days of entry of the Preliminary Approval Order.

- Settlement Class Members shall have forty-five (45) days after Class Notice is disseminated to request to be excluded from the Settlement Class or to object to the Settlement Agreement.

18

- Subclass 1 Members shall have seventy (70) days after Class Notice is disseminated to submit a valid Claim Form.

- A final hearing on the fairness and reasonableness of the Agreement and whether the final approval shall be given to it, and the requests for fees, expenses and incentive awards, will be held before this Court approximately 128 days after preliminary approval, or a different date at least ninety (90) days from the notification provided under the Class Action Fairness Act.

## ARGUMENT

## I.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The "settlement of a class action is generally favored and encouraged."  *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *1 (S.D. Ohio Aug. 19, 2009) (internal citations omitted); *see also In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement.") (citation omitted).

Rule 23(e) requires three steps for the approval of a proposed class action settlement:

1. The Court must preliminarily approve the proposed settlement;

2. Members of the class must be given notice of the proposed settlement; and

3. A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

*In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *1 (S.D. Ohio Aug. 19, 2009) (citing Fed. R. Civ. P. 23(e); *Williams v. Vukovich,* 720 F.2d 909, 920–21 (6th Cir. 1983); *Bronson v. Bd. of Educ.,* 604 F.Supp. 68, 71 (S.D. Ohio 1984)).

"[I]n determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness[.]'" *In re*

19

*Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 831 (E.D. Mich. 2008)). The Manual for Complex Litigation explains that:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citing *Manual for Complex Litigation,* § 30.41, at 236–37 (3rd ed.1995)). A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citation omitted). Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation. *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.,* 546 F.Supp. 1, 7 (N.D. Ohio 1982)).

"[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *Inter-Op Hip*, 204 F.R.D. at 350-51 (citing *Vukovich,* 720 F.2d at 923; *see Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 68 (D.Mass.1997) ("[i]n general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair"); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 176 F.R.D. 158, 184 (E.D.Pa.1997) ("[s]ignificant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (internal citations omitted)).

Here, the terms of the Settlement were negotiated at a mediation presided over by the Honorable Dan Aaron Polster. The Settlement provides significant monetary relief to Settlement Class Members. The Settlement provides compensation to Subclass 1 Members for actual, consequential, and non-economic damages. The Settlement also provides compensation to Subclass 2 Members, even though the Court has previously found that the settlement letter that was mailed by Defendant to putative class members—which provided that by cashing the Initial Check, the putative class member was fully releasing Defendant from liability based on the allegations in the class action complaint—was not misleading or deceptive. (Doc. 21). The Settlement does not provide unduly preferential treatment to the Class Representatives. Any service awards to Class Representatives are subject to approval by the Court. As there is no reason to doubt the Settlement's fairness to Settlement Class Members and there are no obvious deficiencies, the Court should grant Plaintiffs' preliminary approval motion.

## II.  CERTIFICATION OF THE SETTLEMENT CLASS

Courts favor the use of settlement classes "to foster negotiated conclusions to class actions." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). A settlement class in complex litigation "actually enhances absent class members' opt-out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential Sec. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).  When granting preliminary approval of a class action settlement, it is appropriate for a court to certify a class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Certification of a class is governed by Rule 23(a) and (b) of the Federal Code of Civil Procedure.

A.      **The Requirements Under Fed. R. Civ. P. 23(a) Are Satisfied**

Rule 23(a) sets forth the following prerequisites for certifying a class:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). These requirements are satisfied here.

1.      **The Settlement Class is so Numerous that Joinder of Individual Members is Impracticable**

First, the Settlement Class is so numerous that joinder of all individual members is impracticable. "[T]here is no strict numerical test for determining impracticability of joinder." *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). "'[S]ubstantial' numbers are usually enough to satisfy the numerosity requirement, and 'it is generally accepted that a class of 40 or more members is sufficient to establish numerosity.'" *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (citing *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir. 2006)). Here, numerosity is satisfied because there are 59 expected individuals in Subclass 1, and 255 expected individuals in Subclass 2.

2.      **There are Questions of Law and Fact Common to the Settlement Class**

Second, there are questions of law and fact common to all Settlement Class Members. There need be only one common question to certify a class. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (citing *Sprague v. Gen. Motors,* 133 F.3d 388, 397 (6th Cir. 1998)). Here, all members of the Settlement Class have been subject to and affected by a uniform course of conduct: specifically, Defendant incorrectly reported that they failed the Exam when, in fact, they had actually passed the Exam. There are

questions of law and fact common to the proposed Settlement Class that predominate over any individual questions. These questions include, but are not limited to: whether Defendant breached its contract with Plaintiffs and Settlement Class Members, whether Defendant owed a duty of care to Plaintiffs and Settlement Class Members, whether Defendant breached that duty of care, whether Defendant violated consumer protection laws of Ohio and Maryland, and whether Defendant has been unjustly enriched at the expense of Plaintiffs and Settlement Class Members. These common questions predominate over any individual questions that may exist.

### 3. Representative Plaintiffs' Claims are Typical of the Claims of the Settlement Class

Third, the claims and defenses of Plaintiffs are typical of the claims and defenses of the Settlement Class. "A named plaintiff's claim is considered to be typical 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 482 (S.D. Ohio 2004) (citing *In re A.M.S.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). "The requirement has been described as 'the representative's interests [being] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Id*

Representative Plaintiffs' and all other Settlement Class Members' claims arise from the same factual issues, and their claims are based on the same legal theories. Plaintiffs and all other Class Members paid a registration fee to Defendant and took the Exam in order to test their knowledge and expertise in the field of sonography. (*See* Complaint, ¶ 31, Doc. 1). Plaintiffs and all other Class Members passed the Exam, but Defendant incorrectly reported that Plaintiffs and all other Class Members failed the Exam. *Id*. As a result of the scoring error and Defendant's

incorrect report, Plaintiffs and all other Class Members suffered damages. *Id.* As a result, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. The Interests of Representative Plaintiffs and Proposed Settlement Class Counsel are Aligned with the Interests of the Settlement Class

Fourth, Plaintiffs and proposed Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class. Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class, as they have participated in this litigation, assisted in developing the terms of this Settlement, and Mary Alyce Dawson attended the mediation in this matter. Their interests are aligned with those of the other Settlement Class Members.

Additionally, Class Counsel are well-qualified to represent the Settlement Class, as they all are experienced attorneys who have handled many complex civil litigation matters including other class actions. The Dann Law Firm Co., LPA ("Dann") has significant experience litigating consumer class actions on behalf of Ohio citizens.  (*See*, Dann Firm Bio, attached hereto as Exhibit B). Similarly, Zimmerman Law Offices, P.C. ("Zimmerman") has extensive experience litigating nationwide consumer class actions. Zimmerman has been appointed class counsel in dozens of class action cases, and has represented nationwide classes of consumers in both state and federal courts. (*See*, Zimmerman Firm Bio, attached hereto as Exhibit C). The work of these firms in this litigation evidence that they are well-qualified to represent the Settlement Class.

### B. The Requirements Under Fed. R. Civ. P. 23(b)(3) Are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Both of these requirements are satisfied here.

1.    **Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions**

Questions common to all Settlement Class Members predominate over any potential individual questions. For the reasons discussed above regarding commonality and typicality, there is no reason to believe that any individual question will predominate over the common questions in this litigation. Common legal issues predominate because all Settlement Class Members' claims arise out of the same misconduct on the part of Defendant. Common fact issues predominate because all Settlement Class Members' claims are focused on Defendant's conduct. Variations in potential damage awards will not defeat class certification. *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196-97 (6th Cir. 1988). As shown by the Settlement, questions regarding individual damages are easily handled by the Claim Form. (SA, Exhibit 3).

2.    **A Class Action is the Superior Method to Fairly and Efficiently Adjudicate the Matter**

Additionally, a class action is the superior method to resolve Plaintiffs' and Settlement Class Members' claims against Defendant. Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against Defendant. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S.

797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available").  Individual Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against the well-funded Defendant, given the comparatively small size of each individual Settlement Class Member's claims. On the facts here, the superiority requirement is satisfied.

### III. SETTLEMENT CLASS COUNSEL ARE WELL-QUALIFIED TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS

"An order certifying a class action . . . must also appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts should consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The work of Dann and Zimmerman in this litigation to date, as well as their experience prosecuting complex litigation matters, demonstrate that they are well-qualified to represent the Settlement Class. *See* Exhibit B and Exhibit C.  Proposed Class Counsel have already expended time and money to represent the Settlement Class in these proceedings, including the mediation presided over by the Court.

### IV. THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS

The Parties agreed upon KCC to be the Settlement Administrator for class notice and settlement administration. (SA, § II. Definitions).  As set forth above in Section II.E, KCC has significant experience as a class action notice provider and administrator. *See also* KCC

Declaration, Exhibit D.  The Parties request the Court's approval and appointment of KCC as the Settlement Administrator.

As explained below, the contents of the Notice and the plan for dissemination of the Notice should also be approved.

### A.  Contents of the Notice

"The notice should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). "All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* Notice documents include the notices attached to the Settlement as Exhibit 4 (Subclass 1 Electronic-Mail Notice), Exhibit 5 (Subclass 1 Postcard Notice), Exhibit 6 (Subclass 2 Electronic-Mail Notice), Exhibit 7 (Subclass 2 Postcard Notice), and Exhibit 8 (Detailed Notice). They were designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights.

The Notice documents collectively include a fair summary of the general terms of the Settlement applicable to the particular subclass to which the notice is directed; instructions for how to opt-out of or object to the Settlement; the Settlement website address where Settlement Class Members can obtain more information; how to participate in the Settlement, how Subclass 1 Members can make a claim; and will set forth the date, time, and place of the Final Fairness Hearing, as set by the Court.

The Notice documents contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out of the Settlement or remain a member of the Settlement Class and be bound by a final judgment, and they direct

individuals to a convenient location to obtain more detailed information. Altogether, the Notice documents fairly apprise the Settlement Class Members of the terms of the Settlement, and the options that are open to them in connection with this Class Action Lawsuit.

### 1.  Opting Out

Any member of the Settlement Class wishing to opt out of the Settlement Class must individually sign and timely submit to the designated mailing address established by the Claims Administrator written notice clearly manifesting their intent to be excluded from the Settlement Class, along with their name and address and the name and number of this Class Action Lawsuit ("Request for Exclusion" or "Opt-Out"). (SA, § XI.A.). To be effective, the Request for Exclusion must be postmarked no later than the Opt-Out and Objection Deadline. The Opt-Out and Objection Deadline shall be no more than forty-five (45) days after the Notice Date (i.e., the date upon which the Settlement Subclass 1 Notice and the Settlement Subclass 2 Notice are first disseminated to the Settlement Class). (SA, § II. Definitions). The Opt-Out and Objection Deadline will be set forth in the Notice.

### 2.  Objecting

A Settlement Class Member desiring to object to the Settlement will be required to submit a timely written notice of his or her objection. To be timely, written notice of an objection in appropriate form must be either (1) sent by mail, hand, or overnight delivery to the addresses set forth in the Notice, or (2) filed through the Court's ECF system if the Objection is from a Settlement Class Member represented by counsel, no later than the Opt-Out and Objection Deadline. (SA, § XI.B.). The Opt-Out and Objection Deadline shall be no more than forty-five (45) days after the Notice Date (i.e., the date upon which the Settlement Subclass 1 Notice and

the Settlement Subclass 2 Notice are first disseminated to the Settlement Class). (SA, § II. Definitions).

Any Settlement Class Member who intends to object to this Settlement must include in the written Objection: (a) their name and address; (b) their arguments, citations, reasons, and evidence supporting the Objection (including copies of any documents relied on); (c) a statement that they are a Settlement Class Member; (d) the date(s) on which they took the RVT exam(s) and received a false failing score; (e) their physical signature; and (f) a statement indicating whether they intend to appear at the Fairness Hearing with or without counsel. (SA, § XI.B.). Any Settlement Class Member who fails to object in the manner prescribed will be deemed to have waived their objections and be forever barred from making any such objections in the Class Action Lawsuit or in any other action or proceeding. *Id.* While the statement described above is *prima facie* evidence that the objector is a member of the Settlement Class, subject to verification based on the Parties' records, in the event of inaccuracies or inconsistencies in the statement, any of the Parties may take limited discovery regarding the matter, subject to Court approval. *Id.*

### B. Notice Program

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Federal Civil Rule 23(c)(2)(B), for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Additionally, "[t]he Due Process Clause … gives unnamed class members the right to notice of the settlement of a class action. To comport with the requirements of due process,

29

notice must be 'reasonably calculated to reach interested parties.'" *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 422–23 (6th Cir. 2012) (citations omitted); *see also In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015), *reconsideration denied*, No. 1:10 MD 2196, 2015 WL 12748013 (N.D. Ohio Dec. 21, 2015); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (notice to absent class members must meet minimum due process requirements).

The Settlement provides that Notice to Settlement Class Members shall be by direct notice via email (with the Claim Form) and the mailing of a postcard. Additionally, there will be an informational website dedicated to the Settlement where Settlement Class Members can obtain additional information regarding the Settlement, including a Detailed Notice and relevant court documents, and Subclass 1 Members can download a customized Claim Form, or fill out a Claim Form on the Settlement Website. Further, the Settlement Administrator shall establish a toll-free number that Settlement Class Members can call with questions or for more information regarding the Settlement. As the Notice Program includes direct notice and a website, it readily satisfies the "best practicable" standard.

The Notice documents and the Notice Program should be approved because they are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class, and comply with Fed. R. Civ. P. 23 and due process requirements.

## CONCLUSION

The Settlement readily meets the standard for preliminary approval. Representative Plaintiffs respectfully request that this Honorable Court enter an Order:

(1)     Preliminarily approving the Settlement;

(2)     Certifying the Settlement Class comprised of Subclass 1 and Subclass 2, under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

(3)     Appointing named Plaintiffs Stephanie Miller and Mary Alyce Dawson as Class Representatives of the Settlement Class;

(4)     Appointing Thomas A. Zimmerman, Jr., Sharon A. Harris, and Maebetty Kirby of the Zimmerman Law Offices, P.C., and Marc Dann and William C. Behrens of the Dann Law Firm, LPA, as Settlement Class Counsel;

(5)     Approving the Claim Form, attached as Exhibit 3 to the SA;

(6)     Appointing Kurtzman Carson Consultants ("KCC") as Settlement Administrator;

(7)     Approving the Notice Program as set forth in the Settlement;

(8)     Approving as to form and content the notices attached to the Settlement Agreement as Exhibit 4 (Subclass 1 Electronic-Mail Notice), Exhibit 5 (Subclass 1 Postcard Notice), Exhibit 6 (Subclass 2 Electronic-Mail Notice), Exhibit 7 (Subclass 2 Postcard Notice), and Exhibit 8 (Detailed Notice);

(9)     Approving as to form and content the letter to accompany the settlement check (attached to the SA as Exhibit 9) that is to be sent to Subclass 2 Members;

(10)    Scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement and the request for attorneys' fees, costs, expenses, and Representative Plaintiff service awards; and

(11)    Granting any other relief that the Court deems reasonable.


Date: November 20, 2017                    Respectfully submitted,

                                           s/ Thomas A. Zimmerman, Jr.

                                           Thomas A. Zimmerman, Jr.
                                           (admitted *pro hac vice*)
                                           Zimmerman Law Offices, P.C.
                                           77 W. Washington Street, Suite 1220
                                           Chicago, Illinois 60602
                                           (312) 440-0020
                                           (312) 440-4180 (fax)
                                           *tom@attorneyzim.com*

                                           Marc E. Dann 0039425
                                           William C. Behrens 0093031
                                           The Dann Law Firm Co., LPA
                                           P.O. Box. 6031040

Cleveland, Ohio 44103
(216) 373-0539
(216) 373-0536 – fax
*notices@dannlaw.com*

*Proposed Co-Lead Settlement Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017, the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
Zimmerman Law Offices, P.C.